IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

**AARON RAWLS,**
    *Plaintiff,*

v.

**REVA KEEN,**
and
**ARETHA FERRELL-BENAVIDES,**
    *Defendants.*

Civil Case No. 4:25CV00028

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUN 02 2025
LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

## COMPLAINT

For his Complaint to this Court, the Plaintiff, Aaron Rawls, by counsel, says as follows:

### INTRODUCTION

1. This is a civil rights lawsuit brought under 42 U.S.C. § 1983 to vindicate rights guaranteed to Rawls – and to every citizen – by the First, Fourth and Fourteenth Amendments to the U.S. Constitution.

2. As a member of the Martinsville City Council, Rawls used the time allotted to him during a recent City Council meeting to criticize the leadership of the city, and to declare his opposition to a pay raise for the City Manager.

3. In response, an armed Deputy Sheriff, acting at the direction of the City Manager, immediately seized Rawls and forced him to leave his chair, leave the meeting, and leave the building where the meeting was being held.

4. As James Madison insightfully wrote: "[I]t is proper to take alarm at the first experiment upon our liberties." *Memorial and Remonstrance* (1785), ¶ 3.

5. Taking alarm at the infringement conducted by the Deputy Sheriff and City Manager, Rawls files this lawsuit to vindicate his rights under the Constitution and, in a

larger sense, the rights of *all* citizens of Martinsville who may harbor views critical of their local government.

## PARTIES

6. The Plaintiff, Aaron Rawls, is a citizen of the Commonwealth of Virginia and a resident and voter of the City of Martinsville, Virginia. Rawls is also a member of the City Council of the City of Martinsville (the "City Council"), having been elected at-large by the voters of Martinsville in November 2022 for a four-year term.

7. The Defendant, Reva Keen, is a Deputy Sheriff in the City of Martinsville. Keen is sued in her personal capacity.

8. The Defendant, Aretha Ferrell-Benavides, is the City Manager of the City of Martinsville, having been appointed to the position by the City Council in October 2023. Ferrell-Benavides is sued in her personal capacity.

## JURISDICTION AND VENUE

9. This Court has jurisdiction of this case under 28 U.S.C. § 1331.

10. Venue is proper in the Western District of Virginia, Danville Division, because the actions that are the subject of this Complaint took place in this District and Division.

## FACTS

11. On March 25, 2025, the City Council held a regular, noticed, public meeting for the transaction of public business (the "March 25 Meeting").

12. As a member of City Council, Rawls attended the March 25 Meeting and took his seat on the dais along with other members of City Council.

13. As City Manager, Ferrell-Benavides was also present at the March 25 Meeting, and, while she has no vote, she also sat on the dais along with members of the City Council.

14. Keen was also present at the March 25 Meeting for the ostensible purpose of providing security. Keen was dressed in her uniform as a Deputy Sheriff and was displaying her badge of authority and was visibly carrying a firearm along with other paraphernalia typically used by law enforcement officers for the purpose of subduing subjects of arrest as needed.

15. At the time of the March 25 Meeting, one issue that had come to the attention of the City Council was whether the City Manager should be given a pay raise, which Rawls opposed.

16. The rules governing the conduct of meetings of the City Council are found in the publication *Rules of City Council* (adopted February 2025), a copy of which is attached as **Exhibit A** .

17. It is the custom and practice of the City Council to include on its public meeting agenda an item titled "Comments by Members of City Council," during which time individual members of the City Council are free to speak on topics of their choosing. *See also Rules of City Council* (adopted February 2025) (**Exhibit A**) at 35 (listing "Comments by Council Members" on the regular Order of Business).

18. The March 25 Meeting included "Comments by City Council Members" on its agenda (Item 12). A copy of that agenda is attached as **Exhibit B.**

19. It is the custom and practice of the City Council for the Mayor of the City of Martinsville (the "Mayor") to preside at meetings of City Council. *See also Rules of City*

3

*Council* (**Exhibit A**) at 9, 27. This custom and practice were followed during the March 25 Meeting, and the Mayor presided over that meeting.

20. The *Rules of City Council* provide that "[a]t meetings of the Council, the **presiding officer** shall preserve order and decorum." *See Rules of City Council* (**Exhibit A**) at 43 (emphasis added).

21. Except as modified by the *Rules of City Council* as limited by the City Charter, "Robert's Rules [are] the governing parliamentary procedures during meetings" of the City Council. *Rules of City Council* (**Exhibit A**) at 27.

22. Neither the City Manager nor any Deputy Sheriff has any authority to initiate any action with respect to the preservation of order and decorum among members of City Council at meetings of the Council.

23. Consistent with custom and practice, during the March 25 Meeting, the Mayor granted Rawls the floor for comments of his choosing during the segment listed on the agenda as "Comments by City Council Members."

24. The *Rules of City Council* provide that a speaker may not "go[] beyond reasonable standards of courtesy in his or her remarks…." *Rules of City Council* (**Exhibit A**) at 43. But they impose no other limitation on what a member of City Council may say while speaking during the "Comments by Council Members" portion of the agenda.

25. Upon being granted the floor during that portion of the agenda, Rawls used a portion of his time to complain about the quality of leadership in the City of Martinsville and to express his view that a pay raise for such leadership was unwarranted.

26. Unknown to Rawls at the time – and not publicly disclosed before or during the March 25 Meeting – the Mayor had already executed a letter contract dated March

4

18, 2025, purporting to grant Ferrell-Benavides a 15 percent pay raise (the "March 18 Letter").  See **Exhibit C.**[1]

27.     Rawls did not learn about the March 18, 2025 Letter until the news media reported it to the public on or about April 30, 2025.  This was almost one full month after the April 1 date that Ferrell-Benavides' pay raise took effect according to the March 18 Letter.

28.     During his comments at the March 25 Meeting, Rawls made it clear that he was not in favor of a pay raise for the City Manager; however, he did not go "beyond reasonable standards of courtesy" in his remarks nor did he even mention the City Manager by name or title.

29.     Nevertheless, upon hearing these remarks from Rawls, the Mayor directed him to "fall in order."

30.     Unsure what the Mayor meant by that odd phrase (particularly given Rawls' adherence to the applicable rules), Rawls asked for clarification, whereupon the Mayor (improperly) accused Rawls of "making personal attacks," and took the floor from Rawls, saying simply, "Your time's up. We're going to move on…."

31.     A true and complete copy of Rawls' remarks during the "Comments by City Council Members" portion of the agenda – along with Rawls' colloquy with the Mayor – is attached as **Exhibit D.**

32.     As shown on **Exhibit D,** all of Rawls' remarks are protected speech under the First Amendment.

---

[1]     While it may or may not become relevant to this litigation, Rawls disputes the validity of the Mayor's action as reflected in the March 18 Letter.

33.     During the colloquy between Rawls and the Mayor, Keen moved from her position on the opposite side of the room from Rawls and walked to where Rawls was sitting on the dais.

34.     When Keen arrived at Rawls' chair on the dais, the colloquy between Rawls and the Mayor had ended, and another member of the City Council was beginning to speak.  Rawls was not attempting to continue his own remarks, or to interrupt the other member, or to do anything inconsistent with the good order of the meeting.

35.     By her show of authority as a Deputy Sheriff, by her physically seizing Rawls with her hands, and by her words, Keen made it clear to Rawls (i) that his freedom of movement was being restrained by Keen, (ii) that Rawls was not free to remain in his seat on the dais, (iii) that Rawls was being required by Keen to accompany her through the exit door of the City Council chambers and then to the exit door of the building, where Keen required him to leave the building (ordering him "Outside.  Go on outside."), and (v) that compliance with her demands would be compelled if he refused.

36.     As a member of City Council, elected by the citizens of Martinsville, Rawls had the authority and right to remain in his seat on the dais throughout the March 25 Meeting.

37.     Rawls did not leave his seat or the March 25 Meeting or the building voluntarily. He only left because, when confronted by Keen and her show of authority, he felt he had no choice but to comply with her demands.

38.     In view of all the surrounding circumstances, a reasonable person would have believed (and Rawls did so believe) that his freedom of movement was restrained by Keen, that he was not free to remain in his seat on the dais or in the City Council

6

Chambers, that he was not free to disobey any of the demands by Keen, and that any disobedience would risk further physical compulsion by Keen.

39. At no point during the March 25 Meeting did the Mayor, who was presiding over the meeting, call upon Keen (or anyone else) to take such action (or any action whatsoever) against Rawls. Nor did the Mayor, at any time during the March 25 Meeting, do anything audibly or visibly calling for Rawls to be removed, nor did the Mayor threaten Rawls with removal or warn him that he could be removed.

40. Keen had no legitimate authority and no right to force Rawls to leave his seat on the dais or to take any of the actions herein alleged with respect to Rawls.

41. All of Keen's actions with respect to Rawls during the March 25 Meeting were under color of state law.

42. On information and belief, Keen did not act alone. Instead, Keen acted pursuant to instructions from Ferrell-Benavides, who can be seen in a video of the March 25 Meeting giving Keen non-verbal signals for her to accost Rawls.

43. On information and belief, Keen and Ferrell-Benavides acted in concert as part of a pre-conceived plan for Keen to seize and remove Rawls if Ferrell-Benavides signaled for her to do so.

44. Ferrell-Benavides had no legitimate role with respect to the conduct, order or decorum of the March 25 Meeting and no legitimate authority or right to order or cause the removal of Rawls.

45. A few minutes after Keen removed Rawls, Ferrell-Benavides spoke to the other members of the City Council and public, praising herself as a city manager and telling her audience that she was underpaid compared to other city managers and

7

compared to what she was paid in her previous position. A true and complete copy of Ferrell-Benavides' speech is attached as **Exhibit E**.

46. Because Keen and Ferrell-Benavides had removed Rawls from the meeting, Rawls was not able to hear Ferrell-Benavides' speech or make any response.

47. Ferrell-Benavides' actions, as alleged herein, were under color of state law.

48. By their actions, Keen and Ferrell-Benavides acting in concert (or, in the alternative, Keen) caused Rawls to suffer personal humiliation and embarrassment (i) in front of members of the Martinsville community who were present during the March 25 Meeting, including but not limited to family, friends, and constituents, and (ii) before other members of the public who have seen videos of the March 25 Meeting posted on the internet.

49. At the time of the filing of this Complaint, Ferrell-Benavides retains her position as City Manager and Keen retains her position as Deputy Sheriff. Unless Keen and Ferrell-Benavides are restrained by this Court, Rawls is in danger of similar actions in the future by Keen and Ferrell-Benavides, whether acting individually, in concert with each other, or in concert with others.

## COUNT I

### VIOLATION OF THE FIRST AMENDMENT: VIEWPOINT DISCRIMINATION

50. The allegations of the foregoing paragraphs are incorporated in full.

51. Keen and Ferrell-Benavides acting in concert (or, in the alternative, Keen) caused Rawls to be removed from the dais and from the March 25 Meeting, as alleged herein, (i) as retaliation, punishment, or otherwise because of Rawls' views as expressed by him on one or more occasions in his role as a member of City Council, including but

8

not necessarily limited to the views he expressed during the March 25 Meeting opposing a pay raise for the City Manager, Ferrell-Benavides, and/or (ii) to prevent Rawls from hearing and responding to Ferrell-Benavides' speech praising herself and telling her audience that she was underpaid.

52. In so doing, Keen and Ferrell-Benavides acting in concert (or, in the alternative, Keen) violated Rawls rights as guaranteed by the Free Speech Clause of the First Amendment, made applicable to the facts of this case by the Fourteenth Amendment.

53. Under 42 U.S.C. § 1983, Keen and Ferrell-Benavides are both personally liable to Rawls for acting under color of state law to violate Rawls' First Amendment right to free speech. In the alternative, Keen is so liable.

54. Keen and Ferrell-Benavides are jointly and severally liable to Rawls for compensatory damages for their actions as alleged herein, which not only violated Rawls' rights but unjustly caused him personal humiliation and embarrassment. In the alternative, Keen is so liable.

55. In the alternative to compensatory damages, Keen and Ferrell-Benavides are jointly and severally liable to Rawls for nominal damages for their actions as alleged herein. In the alternative, Keen is so liable.

56. Keen and Ferrell-Benavides are also jointly and severally liable to Rawls for punitive damages because they committed the acts alleged herein (i) with actual malicious or evil motive or intent, or (ii) with reckless or callous indifference to the Rawls' federally protected rights. *See Smith v. Wade*, 461 U.S. 30, 30 (1983). In the alternative, Keen is so liable.

57. Under 42 U.S.C. 1988, Keen and Ferrell-Benavides are also jointly and severally liable to Rawls for an award of attorneys' fees and costs incurred by Rawls in connection with this lawsuit. In the alternative, Keen is so liable.

## COUNT II

### VIOLATION OF THE FOURTH AMENDMENT: UNREASONABLE SEIZURE

58. The allegations of the foregoing paragraphs are incorporated in full.

59. Keen and Ferrell-Benavides acting in concert (or, in the alternative, Keen) caused Rawls to be unreasonably seized in violation of his rights under the Fourth Amendment, made applicable to the facts of this case by the Fourteenth Amendment.

60. Under 42 U.S.C. § 1983, Keen and Ferrell-Benavides are both personally liable to Rawls for their actions under color of state law that deprived Rawls of his Fourth Amendment right to be free from unreasonable seizures. In the alternative, Keen is so liable.

61. Keen and Ferrell-Benavides are jointly and severally liable to Rawls for compensatory damages for their actions as alleged herein, which not only violated Rawls' rights but unjustly caused him personal humiliation and embarrassment. In the alternative, Keen is so liable.

62. In the alternative to compensatory damages, Keen and Ferrell-Benavides are jointly and severally liable to Rawls for nominal damages for their actions as alleged herein. In the alternative, Keen is so liable.

63. Keen and Ferrell-Benavides are also jointly and severally liable to Rawls for punitive damages because they committed the acts alleged herein (i) with actual

malicious or evil motive or intent, or (ii) with reckless or callous indifference to the Rawls' federally protected rights. In the alternative, Keen is so liable.

64. Under 42 U.S.C. 1988, Keen and Ferrell-Benavides are also jointly and severally liable to Rawls for an award of attorneys' fees and costs incurred by Rawls in connection with this lawsuit. In the alternative, Keen is so liable.

## COUNT III

### VIOLATION OF THE FIRST AND/OR FOURTEENTH AMENDMENTS: DEPRIVATION OF LIBERTY

65. The allegations of the foregoing paragraphs are incorporated in full.

66. As a member of the City Council, elected by the voters of Martinsville, Rawls has a liberty interest in holding that office, discharging the duties of that office, and exercising the functions of that office without unreasonable interference from persons acting under color of state law.

67. This liberty interest is protected by the First Amendment, made applicable here by the Fourteenth Amendment, or by the Fourteenth Amendment directly, and it includes, without limitation, attendance and participation in meetings of the City Council.

68. Keen and Ferrell-Benavides acting in concert (or, in the alternative, Keen) unreasonably interfered with said liberty interest by forcing Rawls to leave the March 25 Meeting, thereby depriving Rawls of his liberty without due process of law in violation of the First and/or Fourteenth Amendments.

69. Under 42 U.S.C. § 1983, Keen and Ferrell-Benavides are both personally liable to Rawls for their actions under color of state law that deprived Rawls of said liberty interest without due process of law as alleged here. In the alternative, Keen is so liable.

70. Keen and Ferrell-Benavides are jointly and severally liable to Rawls for compensatory damages for their actions as alleged herein, which not only violated Rawls' rights but unjustly caused him personal humiliation and embarrassment. In the alternative, Keen is so liable.

71. In the alternative to compensatory damages, Keen and Ferrell-Benavides are jointly and severally liable to Rawls for nominal damages for their actions as alleged herein. In the alternative, Keen is so liable.

72. Keen and Ferrell-Benavides are also jointly and severally liable to Rawls for punitive damages because they committed the acts alleged herein (i) with actual malicious or evil motive or intent, or (ii) with reckless or callous indifference to the Rawls' federally protected rights. In the alternative, Keen is so liable.

73. Under 42 U.S.C. 1988, Keen and Ferrell-Benavides are also jointly and severally liable to Rawls for an award of attorneys' fees and costs incurred by Rawls in connection with this lawsuit. In the alternative, Keen is so liable.

## COUNT IV

### VIOLATION OF THE FOURTEENTH AMENDMENT: EQUAL PROTECTION

74. The allegations of the foregoing paragraphs are incorporated in full.

75. Under the Equal Protection Clause of the Fourteenth Amendment, the voters of Martinsville have a right to participate on an equal basis with other voters of Martinsville in the selection of members of City Council.

76. Under the Equal Protection Clause of the Fourteenth Amendment, the voters of Martinsville who cast their votes for Rawls (the "Rawls Voters") have the right

for Rawls, as their chosen City Council member, to participate in the meetings of City Council on an equal basis with City Council members who were elected by other voters.

77. The Rawls Voters include Rawls.

78. Keen and Ferrell-Benavides acting in concert (or, in the alternative, Keen) deprived the Rawls Voters of their rights under the Equal Protection Clause by forcing Rawls to leave the March 25 Meeting while other members of City Counsil remained.

79. Under 42 U.S.C. § 1983, Keen and Ferrell-Benavides are both personally liable for their actions under color of state law that deprived the Rawls Voters of their rights under the Equal Protection Clause. In the alternative, Keen is so liable.

80. Keen and Ferrell-Benavides are jointly and severally liable to Rawls for nominal damages for their actions as alleged herein. In the alternative, Keen is so liable.

81. Keen and Ferrell-Benavides are also jointly and severally liable to Rawls for punitive damages because they committed the acts alleged herein (i) with actual malicious or evil motive or intent, or (ii) with reckless or callous indifference to the Rawls Voters federally protected rights. In the alternative, Keen is so liable.

82. Unless Keen and Ferrell-Benavides are restrained by this Court, the Rawls Voters (including Rawls) are in danger of similar actions in the future by Keen and Ferrell-Benavides, whether acting individually, in concert with each other, or in concert with others.

83. Under 42 U.S.C. 1988, Keen and Ferrell-Benavides are also jointly and severally liable to Rawls for an award of attorneys' fees and costs incurred by Rawls in connection with this lawsuit. In the alternative, Keen is so liable.

WHEREFORE, Rawls prays for the entry of Orders granting the following relief:

1. Declaring that the actions of Keen and Ferrell-Benavides acting in concert (or, in the alternative, Keen) violated Rawls' rights under the First, Fourth, and Fourteenth Amendments;

2. Issuing preliminary and permanent injunctions prohibiting Keen and Ferrell-Benavides from taking any future action to cause Rawls to be removed from any future meeting of the City Council;

3. Entering judgment against Keen and Ferrell-Benavides, jointly and severally, for compensatory damages in an amount to be determined at trial;

4. In the alternative to compensatory damages, entering judgment against Keen and Ferrell-Benavides, jointly and severally, for nominal damages;

5. Entering judgment against Keen and Ferrell-Benavides, jointly and severally, for punitive damages in the amount to be determined at trial;

6. Awarding Rawls his attorneys fees and costs herein incurred, as provided by 42 U.S.C. §1988, to be paid by Keen and Ferrell-Benavides, jointly and severally;

7. In the alternative to awarding the foregoing items of relief against Keen and Ferrell-Benavides, jointly and severally, awarding such relief against Keen; and

8. Granting such additional and other relief as the equities of the case may require.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

AARON RAWLS

By: /s/ Annemarie DiNardo Cleary
          Counsel

William H. Hurd (VSB # 16967)
Annemarie DiNardo Cleary (VSB # 28704)
ECKERT SEAMANS CHERIN & MELLOTT
919 East Main Street, Suite 1300
Richmond, Virginia 23219
(804) 788-7740 (voice)
(804) 698-2950 (fax)
whurd@eckertseamans.com
acleary@eckertseamans.com